ANNE SCOTT, Administrator for the ESTATE OF DAVID SCOTT, and ANNE SCOTT, Individually, Plaintiff v. CITY OF CHARLOTTE, Defendant

No. COA09-893

(Filed 20 April 2010)

## Immunity— governmental—public duty doctrine—summary judgment

The trial court erred in denying defendant City of Charlotte's motion for summary judgment on plaintiff's negligence claims. The public duty doctrine barred plaintiff's claims that city police officers were negligent in failing to summon medical assistance

for her husband who appeared to be physically impaired in some respect. The officers were providing police protection to the general public, made a discretionary decision causing indirect harm to the individual, and had no duty to summon medical help, especially when the individual declined assistance. Moreover, no exceptions to the public duty doctrine were applicable.

Appeal by defendant from order entered 30 January 2009 by Judge Nathaniel Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 January 2010.

*DeVore, Acton & Stafford, PA, by Fred W. DeVore, III; Kuruc Law Offices, by Joan Kuruc, for plaintiff-appellee.*

*Gray King Chamberlin & Martineau, LLC, by L. Kristin King and Jennifer P. Pulley, for defendant-appellant.*

HUNTER, Robert C., Judge.

The City of Charlotte ("defendant" or "the City") appeals from the trial court's denial of its motion for summary judgment. After careful review, we reverse the trial court's order.

<u>Background</u>

At approximately 9:00 a.m. on 12 November 2005, a call was placed to the Charlotte 911 dispatch center reporting an erratic driver. The Charlotte Mecklenburg Police Department was notified and Officer Todd Davis ("Officer Davis") located the reported vehicle. Officer Davis pulled in behind the vehicle and activated his lights and siren. The driver of the vehicle then pulled over on the side of the road. Officer Davis received back-up assistance from Officer Brandy Lingle ("Officer Lingle") and Officer Erika Conway ("Officer Conway").[1]

Officer Davis asked the driver for his license and registration, which he produced. The driver was identified as David Scott ("Mr. Scott"). Upon questioning by Officer Davis, Mr. Scott explained that he had driven from Cary, North Carolina that morning and was heading to a job site where he had left some work related materials that he needed for that afternoon. Officer Davis asked Mr. Scott if he had been drinking and Mr. Scott replied that he had not. Officer Davis also inquired about any medications that Mr. Scott was taking and Mr.

---

1. The officers' interaction with Mr. Scott was captured by the patrol car's video recording device. The dialogue has been transcribed and is part of the record.

Scott replied that he took blood pressure medication that morning as well as other medications related to a stroke he had suffered the previous spring. Officer Davis determined that "something" was affecting Mr. Scott's ability to operate his vehicle and he informed Mr. Scott that he could not continue to drive. It is uncontested by the parties that Mr. Scott was physically unsteady at the time of the stop. One of the female officers commented: "Sir, we can't let you drive. I mean, you can't even stand here without wobbling . . . ."

Upon questioning Mr. Scott and discovering that there was no one in the Charlotte area whom Mr. Scott could contact, Officer Davis requested that Mr. Scott call his wife in Cary. Officer Davis noticed that Mr. Scott was having difficulty placing the call and promptly took Mr. Scott's cell phone and asked him for his wife's telephone number, which Mr. Scott relayed. Officer Davis then had a conversation with Anne Scott ("Mrs. Scott" or "plaintiff"); however, only Officer Davis' side of the conversation was recorded by the patrol car camera. After informing Mrs. Scott of the situation regarding her husband, Officer Davis told the other officers that Mrs. Scott, a registered nurse, said that Mr. Scott " 'could relapse with a stroke and not realize it.' " Officer Davis told Mrs. Scott that, in his opinion, Mr. Scott's speech was not slurred and that he did not appear to have any paralysis. Officer Davis allowed Mr. Scott to speak with his wife while he discussed the situation with the other two officers: The officers noted that Mr. Scott's mouth was "drooped," but they acknowledged that the condition could be attributed to his prior stroke. After some deliberation between the officers as to the best course of action, Officer Davis informed Mrs. Scott that she would have to drive to Charlotte from Cary to pick up Mr. Scott from a parking lot located near their present location. Officer Davis gave Mrs. Scott a telephone number to call when she arrived in Charlotte and he assured her that someone would bring Mr. Scott's keys to her.

The video transcript reveals that one of the officers asked Mr. Scott if he needed medical assistance; however, no response is indicated. Mrs. Scott stated in her deposition that she did not specifically ask Officer Davis to call an ambulance or take Mr. Scott to a hospital. In his deposition, Officer Davis claimed that it was his belief that Mr. Scott was not having a stroke and that his symptoms were due to an adverse reaction to his medications.

Mr. Scott's vehicle was subsequently moved to a "Pep Boys" parking lot and the officers left the scene. At approximately 11:30 a.m., emergency dispatch received a call that a man had collapsed in the

Pep Boys parking lot. Mr. Scott was located and transported by ambulance to Presbyterian Hospital, where he was pronounced dead the following day. A CT scan revealed that a brain hemorrhage was the cause of death.

On 17 October 2007, Anne Scott, individually and as administrator of her deceased husband's estate, filed a complaint in Mecklenburg County Superior Court against the City, the Charlotte Mecklenburg Police Department, Officer Davis, Officer Lingle, and Officer Conway in their official capacities. Plaintiff alleged, *inter alia*, that the various defendants had committed acts of negligence, gross negligence, and negligence per se. Plaintiff also brought a civil rights action pursuant to 42 U.S.C. § 1983. The City and Officers Davis, Lingle, and Conway, filed answers in which they pled the public duty doctrine as a defense to liability. On 3 April 2008, plaintiff voluntarily dismissed defendant Charlotte Mecklenburg Police Department. On 20 August 2008, plaintiff voluntarily dismissed Officers Davis, Lingle, and Conway. On 10 September 2008, the City filed a motion for summary judgment, claiming that there were no material issues of fact for jury consideration. On 2 January 2009, defendant filed a supplemental motion for summary judgment. A hearing was held on 12 January 2009 to address defendant's motion for summary judgment. On 30 January 2009, the trial court denied defendant's motion for summary judgment.

## Interlocutory Nature of Appeal

An order denying a motion for summary judgment is interlocutory because it "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). As a general rule this Court does not review interlocutory orders; "[h]owever, an appeal based on the public duty doctrine 'involves a substantial right warranting immediate appellate review.' " *Estate of McKendall v. Webster*, —— N.C. App. ——, ——, 672 S.E.2d 768, 770 (2009) (quoting *Cockerham-Ellerbee v. Town of Jonesville*, 176 N.C. App. 372, 374, 626 S.E.2d 685, 687 (2006)). "The scope of our review in this case is . . . limited to issues that implicate the public duty doctrine." *Id.*

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). We review a grant or denial of summary judgment *de novo*. *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999). On appeal, this Court must determine: " '(1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law.' " *McCoy v. Coker*, 174 N.C. App. 311, 313, 620 S.E.2d 691, 693 (2005) (quoting *NationsBank v. Parker*, 140 N.C. App. 106, 109, 535 S.E.2d 597, 599 (2000)). "For the case at bar, we must discern whether, upon review of the evidence in a light most favorable to plaintiff's claims, judgment as a matter of law should have been entered in favor of defendant[] upon the assertion of the defense[] of the public duty doctrine . . . ." *Lassiter v. Cohn*, 168 N.C. App. 310, 315, 607 S.E.2d 688, 691, *disc. review denied*, 359 N.C. 633, 613 S.E.2d 686 (2005).

## Analysis

### I. Application of the Public Duty Doctrine

The threshold question in this case is whether the public duty doctrine serves to bar plaintiff's negligence claims in this specific circumstance, where plaintiff asserts that city police officers failed to summon medical assistance for an individual who appeared to be physically impaired in some respect, but did not request medical attention. Defendant argues that the public duty doctrine bars recovery in this case, and, therefore, summary judgment should have been entered in its favor. We agree with defendant and hold that the public duty doctrine shields defendant from liability under these specific circumstances.

In a claim for negligence, there must exist a "legal duty owed by a defendant to a plaintiff, and in the absence of any such duty owed the injured party by the defendant, there can be no liability." *Hedrick v. Rains*, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283 (internal citation omitted), *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). "[W]hen the public duty doctrine applies, the government entity, as the defendant, owes no *legal* duty to the plaintiff." *Blaylock v. N.C. Dep't of Correction*, —— N.C. App. ——, ——, 685 S.E.2d 140, 143 (2009).

In *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 907 (1991) (internal citation omitted), our Supreme Court adopted the common law public duty doctrine, stating:

The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act.

In *Braswell*, a woman was killed by her estranged husband and her son, as administrator of his deceased mother's estate, filed suit against the county sheriff, alleging that the sheriff had negligently failed to protect the plaintiff's mother from foreseeable harm. *Id.* at 366, 410 S.E.2d at 899. The Supreme Court rejected the plaintiff's arguments and concluded that the public duty doctrine shielded the sheriff from liability. *Id.* at 371-72, 410 S.E.2d at 901-02.

Since *Braswell*, the application of the public duty doctrine in this State has been expanded and "interpreted to apply to public duties beyond those related to law enforcement protection." *Lassiter*, 168 N.C. App. at 316, 607 S.E.2d at 692; *see Moses v. Young*, 149 N.C. App. 613, 616, 561 S.E.2d 332, 334-35 (providing in depth analysis of case law since *Braswell*), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 199 (2002). However, in *Isenhour v. Hutto*, 350 N.C. 601, 517 S.E.2d 121 (1999), the Supreme Court refused to apply the public duty doctrine to a negligence claim against the City of Charlotte where a crossing guard instructed a child to cross the street and the child was then hit by a vehicle. The Court distinguished the narrow duty held by a crossing guard to protect the children crossing the street from the general duty of a police officer to protect the public at large. *Id.* at 608, 517 S.E.2d at 126.

In *Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652 (2000) (*Lovelace I*) our Supreme Court "sought to reign in the expansion of the public duty doctrine's application to other government agencies and ensure it would be applied in the future only to law enforcement agencies fulfilling their 'general duty to protect the public,' and thus reasserted the principles of *Braswell*." *Lassiter*, 168 N.C. App. at 317, 607 S.E.2d at 692 (quoting *Lovelace I*, 351 N.C. at 461, 526 S.E.2d at 654). In *Lovelace I*, a 911 operator delayed six minutes before dispatching firefighters to a house fire where a young girl ultimately died. 351 N.C. at 459-60, 526 S.E.2d at 653-54. The Supreme Court declined to expand the public duty doctrine in *Lovelace I. Id.* at 461, 526 S.E.2d at 654. After remand from the Supreme Court in *Lovelace I*, this Court held, on a subsequent appeal where plaintiff argued that

the 911 operator was actually a police officer serving as a 911 operator, that the public duty doctrine did not apply to shield the officer's negligence. *Lovelace v. City of Shelby*, 153 N.C. App. 378, 384-86, 570 S.E.2d 136, 141, *disc. review denied*, 356 N.C. 437, 572 S.E.2d 785 (2002) (*Lovelace II*). The Court reasoned:

> Our Supreme Court has not seen the public duty doctrine as blanket protection for local municipalities carrying out all of the activities traditionally undertaken by them. The narrow scope of the public duty doctrine does not increase the burden on local law enforcement and city officials in that their duties are no greater than they have always been. The public duty doctrine is simply meant to provide protection to local law enforcement officials and the municipalities for which they work in a narrow set of circumstances.

*Id.* at 386, 570 S.E.2d at 141.

Plaintiff argues that *Braswell* and the holdings of *Lovelace I* and *II* stand for the proposition that the public duty doctrine applies only to situations where the police fail to protect a citizen from acts of a third party. We disagree. This Court in *Lassiter* soundly rejected that argument with regard to *criminal acts* of a third party, stating:

> *Braswell's* rationale for the rule focused on the limited resources of local government, and necessarily the discretionary decisions as to how those resources must be deployed. However, we find implicit in *Braswell* and the public duty doctrine that an officer fulfilling his or her duty to provide police protection must employ some level of discretion as to what each particular situation requires, criminal or otherwise. Therefore, we do not read *Braswell* or *Lovelace* [] as immunizing discretionary decisions of law enforcement officers to *only* those occasions when responding to criminal offenders.

168 N.C. App. at 317, 607 S.E.2d at 692-93 (emphasis added). In *Lassiter*, this Court applied the public duty doctrine where a police officer who responded to a traffic accident did not call for back-up at the scene, reroute traffic with flares, or have the cars from the collision moved. *Id.* at 318, 607 S.E.2d at 693. As a result of the officer's discretionary acts, the plaintiff, who was standing beside his damaged car on the side of the road and speaking with the officer, was struck by an oncoming car. *Id.* at 313, 607 S.E.2d at 690. The Court reasoned, "[t]hough viewing the evidence in a light most favorable to plaintiff, we cannot ignore the discretionary demands of a police offi-

cer fulfilling her general duties owed when responding to the many and synergistic elements of a traffic accident. . . . Therefore, we hold that upon these limited facts, the public duty doctrine is applicable." *Id.* at 318, 607 S.E.2d at 693. While *Lassiter* did involve acts of a third party, the Court did not base their holding on that fact; rather, the Court's reasoning centered on the officer's discretionary acts that indirectly led to plaintiff's injury.

In *Little v. Atkinson*, 136 N.C. App. 430, 524 S.E.2d 378, *disc. review denied*, 351 N.C. 474, 543 S.E.2d 492 (2000), this Court applied the public duty doctrine where police officers of the City of Gastonia failed to completely remove the remains of a victim from a crime scene and the victim's family discovered bones and personal effects of the deceased. The Court held that the family's gross negligence claim was barred by the public duty doctrine and that the conduct of the officers did not rise to the level of an intentional tort. *Id.* at 434, 524 S.E.2d at 381. In *Atkinson*, the Court did not take into consideration any acts of a third party.

Though our courts have both expounded upon and narrowed the application of the public duty doctrine since 1991, *Braswell* and its progeny have not wavered from the general principle that when a police officer, acting to protect the general public, indirectly causes harm to an individual, the municipality that employs him or her is protected from liability. This principle is grounded in the notion that an officer's duty to protect the public requires the officer to make discretionary decisions on a regular basis, whether it be responding to an alleged threat by an abusive spouse or clearing the scene of a car accident.

Conversely, "[t]his Court has never applied the public duty doctrine when a police officer's affirmative actions have directly caused harm to a plaintiff." *Blaylock,* —— N.C. App. at ——, 685 S.E.2d at 144; *see Smith v. Jackson Cty. Bd. of Educ.,* 168 N.C. App. 452, 460, 608 S.E.2d 399, 406 (2005) (holding claim involved intentional conduct where plaintiff sued school resource officer for "interference with civil rights."); *Moses,* 149 N.C. App. at 618, 561 S.E.2d at 335 (holding public duty doctrine inapplicable where officer accidentally struck motorcyclist with his police car while in pursuit of another motorcyclist as there was an absence of " 'discretionary governmental action' " (citation omitted)).

Here, plaintiff claims that the officers' failure to summon medical assistance for Mr. Scott directly caused him harm as he went two

hours without medical attention that could have saved his life. We disagree and hold that the officers, while engaged in their duties to protect the general public, made discretionary decisions that indirectly caused harm to Mr. Scott. At the time the officers pulled Mr. Scott over, they were engaged in their general law enforcement duty to protect the public from an erratic driver who they believed could be intoxicated. Upon speaking with Mr. Scott, it was the officers' belief that he was not intoxicated, but was impaired in some respect and could no longer operate his vehicle. Based on the video transcript provided, it is clear that Mr. Scott was unstable when standing. The officers acknowledged that he had a slightly drooping mouth, though they recognized that the latter symptom could have been a result of his prior stroke. According to Officer Davis, Mr. Scott's speech was not slurred and he did not appear to have any paralysis. Officer Davis then called Mrs. Scott, a nurse, who stated that Mr. Scott " 'could relapse with a stroke and not realize it.' " Mrs. Scott spoke with her husband, and, in her deposition, she claimed that Mr. Scott was speaking in a "childlike" manner and that she informed Officer Davis of that fact. Mrs. Scott admitted in her deposition that she did not ask for an ambulance to be called, nor did she ask Officer Davis to take her husband to the hospital. She further stated that it was her understanding, based on her conversation with Officer Davis, that her husband had not requested medical attention. In the video transcript, a female officer, later identified as Officer Lingle, asked Mr. Scott: "Sir, do you feel like you need a medic to come look at you?" No response is transcribed; however, Officer Lingle testified in her deposition that Mr. Scott declined her request. Officer Davis testified that it was his ultimate conclusion that Mr. Scott was reacting to his medications and was not having a stroke.

Based on the video transcript and the officers' depositions, it is clear that the officers were aware that Mr. Scott was impaired and should not be allowed to drive. At that point the officers had to decide what was in the best interest of the general public and Mr. Scott. That decision was discretionary and was based on their personal observations at that time as well as their training as law enforcement officers. All three officers were in accord with the decision to leave Mr. Scott at the Pep Boys based on the circumstances. As a result of this discretionary decision, medical assistance for Mr. Scott was delayed—assistance which could have saved his life. Mr. Scott's death was, arguably, an indirect consequence of the officers' discretionary decision.

**SCOTT v. CITY OF CHARLOTTE**

[203 N.C. App. 460 (2010)]

Plaintiff claims that law enforcement officers are trained in recognizing the symptoms of a stroke, and, if there is even a suspicion that an individual is having a stroke, based on the known symptoms, the officers lose all ability to use their discretion and *must* call for medical assistance. Plaintiff claims that failure to call for medical assistance is a breach of a legal duty. Under these circumstances, we disagree. "[I]t is placing this unreasonable hindsight based standard of liability upon a police officer when performing public duties which is exactly that which the public duty doctrine seeks to alleviate." *Lassiter*, 168 N.C. App. at 318, 607 S.E.2d at 693.

Had Mr. Scott asked for medical assistance, the outcome of this case would likely be different. In that situation, the officers would not have had to weigh the facts and circumstances before them in order to ascertain whether Mr. Scott needed medical assistance as that question would have been answered for them. However, under the present facts, the officers had to make a discretionary decision as to whether medical assistance was needed where neither Mr. Scott or his wife asked for assistance, and, based on Officer Lingle's testimony, Mr. Scott specifically declined medical assistance when asked if he needed it. Plaintiff claims that Mr. Scott was unable to make a reasoned decision at that time as to whether he needed medical assistance. Even if that assertion is true, it is based on the medical determination that Mr. Scott was, in fact, having a stroke—information that was not known to the officers at the time they were conversing with Mr. Scott. Plaintiff's own expert, Dr. Paul McCauley ("Dr. McCauley"), was asked at his deposition: "Is there anything that you saw that indicated that David Scott was not competent to refuse EMS?" Dr. McCauley responded: "No."

In sum, we hold that the public duty doctrine applies in this case where the police officers were providing police protection to the general public and made a discretionary decision that caused an indirect harm to Mr. Scott. Our holding in this case "recognizes the limited resources of law enforcement . . . ." *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901. Defendant argued before the Court, and we agree, that imposing a duty on law enforcement officers to call for medical assistance every time they believe a person *may* have a medical ailment, even where the person declines assistance, would be unreasonable and against the purpose of the public duty doctrine. As defendant argues, the City would likely be forced to implement policies requiring officers to abandon all discretion in similar situations and call for medical services. We decline to impose such a legal duty in this case.

II. Application of the Exceptions to the Public Duty Doctrine

Plaintiffs argue that, if the public duty doctrine is applicable, the two recognized exceptions apply.

> There are two generally recognized exceptions to the public duty doctrine: (1) where there is a *special relationship* between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) when a municipality, through its police officers, creates a *special duty* by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.

*Id.* at 371, 410 S.E.2d at 902 (emphasis added) (citation and quotation marks omitted).

First, we must determine if a special relationship existed between the officers and Mr. Scott.

> Those instances where our Courts have intimated that a special relationship exists relate to some affirmative step taken by the police. These steps either provide a *quid pro quo* with a state's witness or informant where a plaintiff would rely on an agreement with law enforcement, the basis of which most likely includes bargained for police protection in exchange for inculpatory testimony or information . . . .

*Lassiter*, 168 N.C. App. at 320, 607 S.E.2d at 694. Mr. Scott was not a state's witness or informant for purposes of the special relationship exception, nor was there any understood agreement or *quid pro quo*. We, therefore, hold that no special relationship existed in this situation.

Plaintiffs cite to *Multiple Claimants v. N.C Dep't of Health & Human Servs.*, 176 N.C. App. 278, 626 S.E.2d 666 (2006), *aff'd as modified*, 361 N.C. 372, 646 S.E.2d 356 (2007), to support their argument that "[Mr.] Scott was particularly vulnerable and completely depend[e]nt upon the police to get medical assistance[,]" therefore, they formed a special relationship with Mr. Scott. In *Multiple Claimants*, this Court held that the public duty doctrine did not apply where a jail inspector's failure to properly inspect a prison resulted in a fire that killed four inmates. *Id.* at 297, 626 S.E.2d at 678. Alternatively, the Court held that, even if the public duty doctrine applied, the special relationship exception also applied because the inmates were in the custody of the State. *Id.*

*Multiple Claimants* does not support plaintiff's argument that someone in a vulnerable state forms a special relationship with police officers who may assist them, nor have we found support for such a general proposition. *Multiple Claimants* is more appropriately related to plaintiff's argument that Mr. Scott was in police custody at the time of his arrest. "This Court has previously held that a 'special relationship' exists when the plaintiff is in police custody." *Id.* at 293, 626 S.E.2d at 676. (citing *Hull v. Oldham,* 104 N.C. App. 29, 38, 407 S.E.2d 611, 616 (1991)). Plaintiff claims that, though Mr. Scott was not arrested, he was in custody because the officers took his keys and left him in the Pep Boys parking lot.

An individual may be in custody if there is "a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Gaines,* 345 N.C. 647, 662, 483 S.E.2d 396, 405 (1997). "To determine whether a person is in custody, the test is whether a reasonable person in the suspect's position would feel free to leave." *Id.* Based on the interaction between Mr. Scott and the police officers, we find that Mr. Scott was never in police custody. Mr. Scott was pulled over on suspicion of driving while under the influence, but, upon brief inquiry, the officers determined that Mr. Scott was not intoxicated, but was not able to safely operate his vehicle. Mr. Scott's keys were taken so he could not attempt to drive, but the officers never ordered Mr. Scott to remain with his vehicle and he was free to leave that area at any time. A reasonable person in that situation would not feel that he or she was in police custody. Plaintiff's argument is without merit.

Plaintiff also claims that the special duty exception applies in this case. We disagree. Mr. Scott was told that he could not operate his vehicle and that his wife was coming to pick him up. The officers made no specific promises of police protection to Mr. Scott. *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902. In sum, the public duty doctrine is applicable in this case, and we find no exception that would result in imposition of liability under plaintiff's theories of negligence or gross negligence.

Plaintiff also brought a claim of negligence per se against the City, arguing that the officers violated N.C. Gen. Stat. § 122C-301 (2009) by failing to assist a person believed to be intoxicated. N.C. Gen. Stat. § 122C-301 states that "[a]n officer may assist an individual found intoxicated in a public place by[,]" *inter alia,* taking the individual to his home, taking the individual to the home of another person "willing to accept him[,]" or taking the individual to a medical facility if he is in need of medical care and cannot provide it for him-

self. First, the statute lists multiple options that an officer "may" take. *Id.* The statute does not mandate that any action be taken, even if the individual is in need of medical care. *Id.* Moreover, this statute is inapplicable in this situation, in which the officers determined that Mr. Scott was not "intoxicated." Even if the statute were applicable, "in the context of the public duty doctrine, our Supreme Court has held that, unless a statute prescribes a private right of action for its breach, the statute will not be interpreted as an exception to the general public duty doctrine." *Lane v. City of Kinston*, 142 N.C. App. 622, 628, 544 S.E.2d 810, 815 (2001) (citing *Stone v. North Carolina Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998)). *Lane* held that the public duty doctrine applied where a police officer encountered the plaintiff, an intoxicated man sitting on a bench, but refused to take the plaintiff to his brother's house or call a taxi cab for the plaintiff. *Id.* at 623-27, 544 S.E.2d at 812-14. The plaintiff was later robbed, beaten, and thrown off a bridge. *Id.* at 623, 544 S.E.2d at 812. The Court further held that N.C. Gen. Stat. § 122C-301 does not impose an affirmative duty on police officers outside the scope of the public duty doctrine. *Id.* at 628-29, 544 S.E.2d at 815. Accordingly, we hold that the public duty doctrine applies to bar plaintiff's negligence per se claim.

As stated *supra*, this appeal is interlocutory and we will not address issues that do not pertain to the public duty doctrine. Accordingly, we decline to address defendant's assignment of error with regard to plaintiff's 42 U.S.C. § 1983 claim.

### Conclusion

Under the facts of this case, we hold that the public duty doctrine serves as a bar to plaintiff's negligence claims, and, therefore, the trial court erred in denying defendant's motion for summary judgment on that ground. We reverse and remand for further proceedings not inconsistent with this opinion.

Reverse and Remand.

Chief Judge MARTIN and Judge ERVIN concur.