ZACHARY, Judge.
Plaintiff Ricky D. Kelly, as Administrator of the Estate of Patrick Craig Kelly, appeals from the trial court's order granting defendants' motion to dismiss plaintiff's wrongful death and negligence actions for failure to state a claim upon which relief can be granted. We affirm.
Factual and Procedural Background
On 10 February 2017, the Estate of Patrick Craig Kelly ("plaintiff") filed a complaint alleging claims for negligence and wrongful death against Polk County, the Polk County Sheriff's Office, Polk County Sheriff Donald J. Hill in his official capacity, and Polk County Deputy Josh Kujawa ("Deputy Kujawa"), both individually and in his official capacity ("defendants").
The complaint alleges, in relevant part, that on 2 April 2016, the Polk County Sheriff's Office Dispatch Center received a 911 call alerting them to a vehicle with a door open and the driver slumped over the steering wheel. Deputy Kujawa and EMS were dispatched to the scene. Deputy Kujawa was the first to arrive on scene, where he discovered Patrick Kelly inside the vehicle, unconscious and "in an obviously impaired state." It is alleged that Deputy Kujawa or another agent of the Polk County Sheriff's Office thereafter canceled the EMS call.
At some point after Deputy Kujawa arrived, Kelly requested that Deputy Kujawa call his friend, Erica Dawn Mills-Bowen, to come pick him up. Deputy Kujawa called Mills-Bowen, who agreed to retrieve Kelly, and Deputy Kujawa then left the scene.
When Mills-Bowen arrived, she found Kelly alone and unconscious. Mills-Bowen took Kelly to her home and called Deputy Kujawa to determine what Kelly had consumed. Deputy Kujawa advised Mills-Bowen that Kelly had apparently taken "Downers." Deputy Kujawa provided no further assistance, and Mills-Bowen put Kelly to bed. Kelly was found dead from an overdose the next morning.
Plaintiff filed negligence and wrongful death claims against defendants. The complaint alleges that defendants were negligent in (1) "[f]ailing to establish proper policies and procedures for dealing with drug related medical emergencies"; (2) "[f]ailing to allow paramedics ... to examine and/or treat" Kelly; (3) "[f]ailing to call for or provide reasonable medical assistance upon observing the obvious impairment of [Kelly]"; (4) "[f]ailing to take reasonable steps to provide assistance for [Kelly] when it was obvious ... that he could not obtain assistance for himself"; (5) "[c]alling a citizen unrelated by blood or marriage to come pick up [Kelly] rather than seeking proper medical assistance when it was obvious that [Kelly] was suffering from a drug overdose"; (6) "[f]ailing to properly supervise or train the officers assigned to act as deputies"; (7) "[f]ailing to properly supervise the acts and omissions of the [agents of the] Sheriff's Department"; (8) "[f]ailing to provide and train the agents of the [d]efendants in the proper use of substances or procedures designed to reverse the effects of a drug overdose"; and (9) "[l]eaving [Kelly] alone at the scene without proper supervision or care," [R p 9] among other acts of negligence.
On 3 March 2017, defendants filed a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Defendants' motion to dismiss asserted that (1) the claims against Polk County were barred because a county is not responsible for the actions of Sheriff's Office employees; (2) the claims against the Polk County Sheriff's Office were barred because the Sheriff's Office is a "nonsuable" entity under North Carolina law; (3) the complaint, in its entirety, is barred against all defendants under the public duty doctrine; and (4) the claims against Deputy Kujawa, in his individual capacity, were barred by public official immunity. The trial court granted defendants' motion to dismiss plaintiff's complaint in its entirety on 17 April 2017. Plaintiff appeals.
Standard of Review
"On appeal of a 12(b)(6) motion to dismiss, this Court conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Burgin v. Owen , 181 N.C. App. 511, 512, 640 S.E.2d 427, 429 (2007) (citation and quotation marks omitted). The Court must examine "the legal sufficiency of the complaint, taking all of its factual allegations as true." Peacock v. Shinn , 139 N.C. App. 487, 492, 533 S.E.2d 842, 846 (2000), disc. review denied , 353 N.C. 267, 546 S.E.2d 110 (2000) (citing Stanback v. Stanback , 297 N.C. 181, 254 S.E.2d 611 (1979) ). "In ruling upon such a motion, the complaint is to be liberally construed, and the trial court should not dismiss the complaint 'unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief.' " Meyer v. Walls , 347 N.C. 97, 111-12, 489 S.E.2d 880, 888 (1997) (quoting Dixon v. Stuart , 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) ) (alteration omitted). However, "where an insurmountable bar to recovery appears" on the face of a complaint, it will not withstand a motion to dismiss. Peacock , 139 N.C. App. at 492, 533 S.E.2d at 846. " 'Such an insurmountable bar may consist of an absence of law to support a claim, an absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim.' " Id. (quoting Al-Hourani v. Ashley , 126 N.C. App. 519, 521, 485 S.E.2d 887, 889 (1997) ).
Discussion
I. Public Duty Doctrine
Plaintiff argues that the claims against Polk County, the Polk County Sheriff's Office, Polk County Sheriff Donald J. Hill in his official capacity, and Polk County Deputy Josh Kujawa in his official capacity are not barred by the public duty doctrine. As no such "insurmountable bar to recovery" exists, plaintiff argues that the trial court erred in granting defendants' motion to dismiss. We disagree, and hold that plaintiff's claims against these defendants are barred by the public duty doctrine.
The public duty doctrine arises wherever an exercise of police powers is the basis of a plaintiff's complaint. Lane v. City of Kinston , 142 N.C. App. 622, 624, 544 S.E.2d 810, 813 (2001) (citation omitted). The doctrine provides immunity for law enforcement decisions that are made while responding to a criminal offense. Lassiter v. Cohn , 168 N.C. App. 310, 317, 607 S.E.2d 688, 693, disc. rev. denied , 359 N.C. 633, 613 S.E.2d 686 (2005). Likewise, the public duty doctrine has been extended to grant immunity to claims that involve a "failure to furnish police protection ... or any other act of negligence proximately resulting in injury." Id. (quotation marks and citation omitted) (emphasis omitted). The doctrine " 'shield[s] the state and its political subdivisions from tort liability arising out of discretionary governmental actions.' " Moses v. Young , 149 N.C. App. 613, 618, 561 S.E.2d 332, 335 (2002) (quoting Stone v. N.C. Dept. of Labor , 347 N.C. 473, 482, 495 S.E.2d 711, 716, cert. denied , 525 U.S. 1016, 142 L.Ed. 2d 449 (1998) (internal quotation marks omitted) ) (alteration omitted). Accordingly, the public duty doctrine will apply when the allegedly tortious conduct involves a "discretionary determination made by the police officer." Lassiter , 168 N.C. App. at 318, 607 S.E.2d at 693.
The rationale behind the public duty doctrine is that the "municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals." Braswell v. Braswell , 330 N.C. 363, 370, 410 S.E.2d 897, 901 (1991) (citation omitted). "This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act." Id. at 370-71, 410 S.E.2d at 901 (citation omitted).
The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be developed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources should be allocated and without predictable limits.
Id. (citation and quotation marks omitted).
There are two generally recognized exceptions to the public duty doctrine: "(1) where there is a special relationship between the injured party and the police, ... and (2) 'when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.' " Id. at 371, 410 S.E.2d at 902 (quoting Coleman v. Cooper , 89 N.C. App. 188, 194, 366 S.E.2d 2, 6, disc. rev. denied , 322 N.C. 834, 371 S.E.2d 275 (1988) ).
In the instant case, plaintiff maintains that the public duty doctrine is inapplicable to his claims against defendants because Deputy Kujawa's actions "were neither discretionary in a legal sense nor appropriate under the circumstances." Therefore, we turn our attention to whether Deputy Kujawa's actions on the night of 2 April 2016 were discretionary. We conclude that they were.
In Moses v. Young , this Court considered the question of whether police officer conduct was discretionary, thereby giving rise to the public duty doctrine, where an officer collided with the plaintiff's motorcycle while in pursuit of another vehicle. We concluded that
[the officer's] act of steering his vehicle into an occupied lane is not the type of "discretionary governmental action" shielded by the public duty doctrine. Clearly, [the officer] did not deliberately collide with decedent's vehicle after actively weighing the safety interests of the public. Rather, [the officer's] actions were accidental in nature and do not implicate an allocation of resources by the Town[.]
Moses , 149 N.C. App. at 618-19, 561 S.E.2d at 335.
We reached a different conclusion under the facts of Lassiter v. Cohn . In Lassiter , an officer's management of the scene of a traffic accident was alleged to have resulted in the plaintiff being injured in a subsequent accident. This Court held that the public duty doctrine barred the plaintiff's claim. In so concluding, we reasoned that
... [the officer] promptly responded to an accident report. Using her trained judgment amidst heavy traffic and other peculiarities of the scene, and prioritizing her concern for the safety of those individuals involved in the accident, she parked her vehicle on the southbound shoulder of the roadway and employed all of her safety lights. She made a discretionary determination not to call for officer assistance as there was no personal injury at the scene, and she did not use flares or cones to redirect traffic around the scene based upon her determination that this would unnecessarily impede the flow of traffic.... Furthermore, she did not have the vehicles in the first collision move further north or off [the road] because the cars involved in the accident were already as far off the road as they could be ... and plaintiff's vehicle required towing.
Though viewing the evidence in a light most favorable to plaintiff, we cannot ignore the discretionary demands of a police officer fulfilling her general duties owed when responding to the many and synergistic elements of a traffic accident. See Beaver v. Gosney , 825 S.W.2d 870 (Mo. App. 1992) (determining that measures required to be taken at an accident scene fall within the public duty doctrine). The record reflects [the officer] "actively weighed the safety interests of the public" when applying her discretion, and that there was nothing accidental about her conduct. Moses , 149 N.C. App. at 618-19, 561 S.E.2d at 335. While there are surely measures that [the officer] may have taken to decrease the threat of a potentially negligent third-party from hitting plaintiff, it is placing this unreasonable hindsight based standard of liability upon a police officer when performing public duties which is exactly that which the public duty doctrine seeks to alleviate.
Lassiter , 168 N.C. App. at 318, 607 S.E.2d at 693.
In the summary judgment context, this Court considered a case in which an officer pulled over a vehicle and the driver, Mr. Scott, was clearly impaired. Scott v. City of Charlotte , 203 N.C. App. 460, 691 S.E.2d 747 (2010). Mr. Scott indicated that he had taken "medications related to a stroke he had suffered the previous spring." Id. at 462, 691 S.E.2d at 749. The officers called Mr. Scott's wife, who lived several hours away. Id.
After informing Mrs. Scott of the situation regarding her husband, [the officer] told the other officers that Mrs. Scott, a registered nurse, said that Mr. Scott 'could relapse with a stroke and not realize it.' [The officer] told Mrs. Scott that, in his opinion, Mr. Scott's speech was not slurred and that he did not appear to have any paralysis.... After some deliberation between the officers as to the best course of action, [the officer] informed Mrs. Scott that she would have to drive to Charlotte from Cary to pick up Mr. Scott from a parking lot located near their present location.
...
Mr. Scott's vehicle was subsequently moved to a "Pep Boys" parking lot and the officers left the scene. [Approximately two and a half hours later], emergency dispatch received a call that a man had collapsed in the Pep Boys parking lot. Mr. Scott was located and transported by ambulance to [a hospital], where he was pronounced dead the following day.
Id. at 462-63, 691 S.E.2d at 749-50. Based on these facts, this Court held that the estate's suit was barred by the public duty doctrine. We explained that "it [was] clear that the officers were aware that Mr. Scott was impaired.... At that point the officers had to decide what was in the best interest of the general public and Mr. Scott. That decision was discretionary and was based on their personal observations at that time[.]" Id. at 468, 691 S.E.2d at 753. We disagreed with the plaintiff's contention that a "failure to call for medical assistance is a breach of a legal duty[,]" and reaffirmed that " '[i]t is placing this unreasonable hindsight based standard of liability upon a police officer when performing public duties which is exactly that which the public duty doctrine seeks to alleviate.' " Id. at 469, 691 S.E.2d at 753 (quoting Lassiter , 168 N.C. App. at 318, 607 S.E.2d at 693 ).
Deputy Kujawa's conduct in the present case is comparable to the officers' conduct in Lassiter and Scott . When Deputy Kujawa arrived on the scene, he discovered that Kelly was intoxicated. At some point, Kelly requested that Deputy Kujawa call Bowen-Mills to pick him up. Rather than arresting Kelly for driving while impaired, calling for medical assistance, or calling Kelly's parents-any of which plaintiff maintains would have been proper-Deputy Kujawa made the decision to call Bowen-Mills to assist Kelly. While Kelly was "initially unconscious and severely impaired" when Deputy Kujawa arrived, Deputy Kujawa's evaluation of the scene ultimately led him to make the deliberate, discretionary decision that emergency medical attention for Kelly was not necessary. See Lassiter , 168 N.C. App. at 318, 607 S.E.2d at 693. That decision directly implicated Polk County's allocation of resources. Moses , 149 N.C. App. at 618-19, 561 S.E.2d at 335. Plaintiff cites no authority suggesting that law enforcement officers have a duty to summon medical attention any time they encounter an individual who is impaired. And, indeed, the law dictates just the opposite. See Scott , 203 N.C. App. at 469, 691 S.E.2d at 754 ("[I]mposing a duty on law enforcement officers to call for medical assistance every time they believe a person may have a medical ailment ... would be unreasonable and against the purpose of the public duty doctrine.").
Because Deputy Kujawa made a deliberate decision, based on his personal observations at the time, we conclude that his actions on the evening of 2 April 2016 were discretionary. Deputy Kujawa made the discretionary decision that he could adequately address Kelly's situation by having Kelly's friend retrieve him. While we agree that there were certainly other measures that Deputy Kujawa may have taken in order to reduce Kelly's risk of overdosing, we decline to impose an "unreasonable hindsight based standard of liability" on law enforcement. Lassiter , 168 N.C. App. at 318, 607 S.E.2d at 693.
Likewise, plaintiff's argument that Deputy Kujawa's conduct was "willful and wanton" does not strip defendants of their immunity under the public duty doctrine. As stated in Clark v. Red Bird Cab Co. ,
[o]nly where the conduct complained of rises to the level of an intentional tort does the public duty doctrine cease to apply.... As long as the claim is negligence, even couched in terms of "gross," "wanton," or "wilful," the public duty doctrine supports the dismissal of the complaint based on the failure to state a claim.
114 N.C. App. 400, 406, 442 S.E.2d 75, 79 (1994). Plaintiff's complaint does not allege that Deputy Kujawa's actions amounted to an intentional tort, or suggest that Deputy Kujawa acted intentionally in bringing about plaintiff's death. See Sutton v. Duke , 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970) ("[M]otions to dismiss should not be granted unless it is very clear that there can be no relief under any of the facts alleged in the pleading for the relief requested or for other relief.") (citation and quotation marks omitted). Although the instant claims are couched in terms of "willful and wanton" conduct, defendants remain protected by the public duty doctrine.
Lastly, plaintiff argues that defendants' immunity was waived upon the purchase of liability insurance. However, as a matter of law, defendants owed no legal duty to Kelly to prevent the harm of which plaintiff has complained. Murray v. Cnty. of Person , 191 N.C. App. 575, 578, 664 S.E.2d 58, 60 (2008), disc. rev. denied , 363 N.C. 129, 673 S.E.2d 360 (2009). In the absence of such a legal duty, plaintiff cannot establish the necessary elements of the asserted claims. Id. The fact that defendants' immunity may have been waived is, therefore, immaterial, and we decline to address plaintiff's arguments to that point.
Accordingly, the trial court did not err in granting defendants' motion to dismiss plaintiff's claims against Polk County, the Polk County Sheriff's Office, Polk County Sheriff Donald J. Hill in his official capacity, and Polk County Deputy Josh Kujawa in his official capacity, because the claims are barred by the public duty doctrine.
II. Plaintiff's Claims Against Deputy Kujawa In His Individual Capacity
Plaintiff argues next that the trial court erred in dismissing his claims against Deputy Kujawa in his individual capacity. Defendants argue that plaintiff's claims against Deputy Kujawa in his individual capacity are barred by the doctrine of public official immunity. However, plaintiff maintains that sufficient facts are alleged in plaintiff's complaint to establish a prima facie showing that Deputy Kujawa's actions "pierced the cloak" of public official immunity. We disagree.
A. Public Official Immunity
Claims against public officials in their individual capacity are not barred by the public duty doctrine. Murray , 191 N.C. App. at 578-79, 664 S.E.2d at 61. However, "[w]here a governmental worker is sued in his individual capacity, ... our courts have consistently applied public officers' immunity." Id. at 579, 664 S.E.2d at 61 (citing Isenhour v. Hutto , 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999) ). Public official immunity only protects "public officers," but does not protect public "employees." Reid v. Roberts , 112 N.C. App. 222, 224, 435 S.E.2d 116, 119 (1993). A deputy sheriff is a "public officer" for purposes of public official immunity. Marlowe v. Piner , 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995) (citing Messick v. Catawba Cnty. , 110 N.C. App. 707, 718, 431 S.E.2d 489, 496 (1993) ).
Under the doctrine of public official immunity, "[p]ublic officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties[.]" Meyer , 347 N.C. at 112, 489 S.E.2d at 888. Thus, the public official immunity afforded to public officers is qualified. This qualified immunity shields a public officer from liability in his individual capacity "unless he engaged in discretionary actions which were allegedly: (1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." Reid , 112 N.C. App. at 224, 435 S.E.2d at 119 (citations omitted).
B. Standard for Surviving a 12(b)(6) Motion to Dismiss in the Context of Public Official Immunity
"The test on a Rule 12(b)(6) motion is whether or not the complaint is legally sufficient." Id. at 223, 435 S.E.2d at 118 (citing Tennessee v. Envtl. Mgmt. Comm'n , 78 N.C. App. 763, 765, 338 S.E.2d 781, 782 (1986) ). North Carolina is a notice pleading state, and for purposes of a 12(b)(6) motion to dismiss, liberally requires that a "claim for relief ... satisfy the requirements of the substantive law which give rise to the pleadings[.]" Sutton , 277 N.C. at 105, 176 S.E.2d at 167 (citation and quotation marks omitted). However, "no amount of liberalization should seduce the pleader into failing to state enough to give the substantive elements of his claim[.]" Id . (citation and quotation marks omitted). "A complaint may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim." Id. at 102-03, 176 S.E.2d at 166 (citation and quotation marks omitted).
C. Analysis
The question before us is whether plaintiff's complaint states a cause of action for liability against Deputy Kujawa in his individual capacity. In the present case, plaintiff's complaint named Deputy Kujawa as a defendant "individually and in his official capacity." This was sufficient to put Deputy Kujawa on notice that plaintiff was seeking to hold him liable for damages in his individual capacity. Cf. Dickens v. Thorne , 110 N.C. App. 39, 45-46, 429 S.E.2d 176, 180 (1993) ("[The plaintiff] at no time makes specific allegations against [the defendant] 'individually.' He does not indicate in the caption of the complaint whether he is suing [the defendant] in his 'official' or 'individual' capacity[.]") (citation omitted).
Because plaintiff does not allege that Deputy Kujawa acted outside the scope of his official duties, we next consider "whether the complaint sufficiently alleges corrupt or malicious conduct[,]" willful and deliberate conduct, or bad faith. Epps v. Duke Univ. , 116 N.C. App. 305, 309, 447 S.E.2d 444, 447 (1994). "[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." Meyer , 347 N.C. at 114, 489 S.E.2d at 890.
In the wrongful death cause of action, plaintiff's complaint explicitly alleges that Kelly's death was caused "through malice or willful or wanton conduct[.]" The negligence cause of action maintains that plaintiff suffered compensatory damages "[a]s a direct and proximate result of the Negligence and/or Willful and/or Wanton conduct of [Deputy Kujawa] [.]" The complaint further alleges that Deputy Kujawa "plac[ed] his personal interest above his duty to the Defendant and or the established policies of the Department," and that Deputy Kujawa acted "in direct violation of the policies and procedures for dispatch of paramedics[.]" To support these allegations, the complaint provides only the following:
one of the primary or motivating factor[s] in the decision of [Deputy Kujawa] to refuse or elect not to follow reasonable or prescribed procedures on the night in question was his desire to avoid the paper work necessary or incident to an arrest and/or the setting of a court date requiring his attendance given his plan to leave the Department.
While we agree that these allegations give sufficient notice that Deputy Kujawa is alleged to have acted willfully and wantonly, we do not agree that the facts asserted, if true, could establish the same. See Epps , 116 N.C. App. at 309, 447 S.E.2d at 447 ; Cf. Reid , 122 N.C. App. at 225-26, 435 S.E.2d at 120. Plaintiff maintains that Deputy Kujawa acted willfully and wantonly in that his decision to call Mills-Bowen instead of getting Kelly official help was based not on a genuine belief that Kelly was not in need of further assistance, but rather on his desire not to have to work beyond his upcoming retirement date. However, this factual allegation would only support the claim that Deputy Kujawa acted willfully and wantonly in not arresting Kelly. It does not suggest that Deputy Kujawa acted willfully or wantonly in his decision not to seek medical attention for Kelly. Unlike an arrest, the complaint does not allege that seeking medical attention for Kelly would have had any bearing on Deputy Kujawa's upcoming retirement date. While Deputy Kujawa may have indeed been negligent in canceling the EMS call, the complaint is devoid of any set of facts which would otherwise support plaintiff's contention that such conduct was corrupt, malicious, outside of and beyond the scope of his duties, in bad faith, or willful and deliberate.
Apart from the allegation that Deputy Kujawa wanted to avoid the paperwork incident to an arrest, the complaint contains only conclusory allegations that Deputy Kujawa acted willfully and/or wantonly. Plaintiff's complaint thus lacks the facts sufficient to establish a good claim for depriving Deputy Kujawa of his public official immunity protections. Accordingly, the trial court did not err in denying defendants' motion to dismiss plaintiff's claims against Deputy Kujawa in his individual capacity for failure to state a claim upon which relief can be granted.
Conclusion
For the aforementioned reasons, we affirm the trial court's order dismissing plaintiff's claims against Polk County, the Polk County Sheriff's Office, Donald J. Hill in his official capacity as Sheriff of Polk County, and Josh Kujawa in his official capacity as Deputy of the Polk County Sheriff's Office and against Josh Kujawa in his individual capacity.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and ARROWOOD concur.