JARVIS LASSITER, Plaintiff v. C.L. COHN (in her official capacity as a police officer for the City of Durham), and CITY OF DURHAM, Defendants/Third-Party Plaintiffs v. PATRICIA THEISEN, Third-party Defendant

No. COA04-672

(Filed 1 February 2005)

**1. Appeal and Error— appealability—interlocutory order—substantial right—sovereign immunity—public duty doctrine**

Although defendants' appeal from the trial court's denial of summary judgment is an appeal from an interlocutory order, the appeal is subject to immediate review because the government's assertion of sovereign immunity and the public duty doctrine affects a substantial right.

**LASSITER v. COHN**

[168 N.C. App. 310 (2005)]

**2. Police Officers— public duty doctrine—negligent control of accident scene**

The trial court erred in a case against the City of Durham and a police officer arising out of the alleged negligent control of an accident scene by denying defendants' motion for summary judgment based on the public duty doctrine, because: (1) an officer fulfilling his duty to provide police protection must employ some level of discretion as to what each particular situation requires, criminal or otherwise; (2) the record reflects that defendant officer actively weighed the safety interests of the public when applying her discretion, and that there was nothing accidental about her conduct; (3) while there are measures that defendant officer may have taken to decrease the threat of a potentially negligent third-party hitting plaintiff, placing an unreasonable hindsight based standard upon a police officer when performing public duties is exactly what the public duty doctrine seeks to alleviate; (4) the special relationship exception to the public duty doctrine does not subject defendants to liability where the officer, as part of her general duty to the public, requested to speak with a party to an accident or crime scene for the purposes of an investigation and the party was not a state's witness or informant nor in police custody; and (5) North Carolina has not adopted the high risk exception to the public duty doctrine that has been accepted by a minority of jurisdictions.

Appeal by defendants from judgment entered 29 January 2004 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 8 December 2004.

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher and Carlos E. Mahoney; and E. Richard Jones, Jr., for plaintiff appellee.*

*The Banks Law Firm, P.A., by Sherrod Banks, for the City of Durham and C.L. Cohn, defendant appellants.*

McCULLOUGH, Judge.

This appeal arises out of plaintiff's claim of negligence against the City of Durham and Durham Police Officer C.L. Cohn (collectively "defendants[1]"). The forecast evidence of the facts giving rise to this

---

1. Defendants implead Ms. Patricia Theisen ("Ms. Theisen"), the driver who hit Mr. Lassiter. Plaintiff and Ms. Theisen's insurer have concluded a good faith settlement of their claims.

LASSITER v. COHN

[168 N.C. App. 310 (2005)]

appeal showed the following: On the night of 25 August 2000, there was excess traffic on Garrett Road in Durham due to the conclusion of a football game at Jordan High School. Adjacent to the high school, Garrett Road has three lanes, a northbound and southbound lane, and a center turning lane. An off-duty police officer was directing the game traffic, and stopped a taxi in front of plaintiff, both heading northbound on Garrett Road with the taxi in front. Approximately ten seconds after plaintiff came to a stop behind the taxi, a minivan struck plaintiff's vehicle from behind and pushed it into the taxi, creating a three-car collision in the northbound lane. The street was not well lit in the area of the accident.

Officer Cohn was dispatched to the accident and arrived coming southbound on Garrett Road in approximately six minutes. Officer Cohn chose to park her vehicle across the street from the accident with her emergency lights in operation, facing southbound, because the heavy traffic prevented her from making a quick maneuver to pull behind the accident to face northbound. She decided not to use flares or other warnings to protect those exposed at the accident scene as well as other drivers because she believed they would interfere with the officer directing traffic out of the game. At no point did she direct plaintiff or the other vehicles at the scene to turn on their car lights. Additionally, she did not require the vehicles to move further off the road or further north on Garrett Road, based on her determination that the cars were already as far off the road as they could be without falling into the ditch on its eastern edge. Plaintiff's vehicle was the most severely damaged, and required towing from the scene.

Officer Cohn conducted a solo investigation of the collision by speaking with the drivers and obtaining their licenses, registrations, and insurance information. Once Officer Cohn received all necessary information from the driver of the minivan, that driver was allowed to leave the scene which left plaintiff's vehicle exposed to any oncoming northbound traffic. Officer Cohn next requested that plaintiff come to the rear of his vehicle so that she could ask him some questions. When he reached the rear of his vehicle, they discussed information of the other drivers, insurance issues, and where he wanted the vehicle towed. Plaintiff stood at the rear for a couple of minutes with his back turned to the northbound traffic.

Ms. Theisen, the third-party defendant in the case, approached the accident in a Mazda Miata coming northbound on Garrett Road. As she rounded a bend on the road just before the accident, she diverted her eyes to the opposite side of the road to the flashing lights

of Officer Cohn's southbound facing police vehicle. Nearly the same time that she was approaching the accident, a tow truck arrived coming via the southbound lane of Garrett Road with its yellow light bar on top of the truck. Ms. Theisen then noticed the accident scene directly in the path of her vehicle, and attempted to avoid hitting it by applying her brakes, and steering towards the shoulder of the road. Attempting to jump out of Ms. Theisen's way, Officer Cohn was struck by the vehicle and landed in a wooded area on the shoulder of the road. Plaintiff was pinned between his car and the Miata, suffering a severe injury to his left leg.

Due to plaintiff's injury he has incurred $196,018.55 of medical expenses, $33,000.00 of lost wages, and a 40% impairment of his left leg. Defendant City of Durham maintains a self-insured retention policy ("SRI") for damage awards in excess of $350,000.00. However, this threshold is reduced by an amount equal to attorney's fees and defense costs defendant expended on litigation of plaintiff's claim. Thus, a theoretical award of $500,000.00 to a plaintiff, where defendant spent $100,000.00 defending the suit, would be insured to the extent of $250,000.00. Initially, plaintiff brought only a negligence action to which defendants asserted the defenses of contributory negligence and all applicable immunities bestowed upon North Carolina governmental bodies and their agents. Plaintiff then filed its first amended complaint, adding claims that the City of Durham's policy of applying the defense of sovereign immunity violated federal due process and equal protection guarantees of the Fourteenth Amendment to the United States Constitution ("U.S. Constitution"), and Equal Protection guarantees of Article I, Section 32 of the North Carolina Constitution ("N.C. Constitution"). In their second amended complaint, plaintiff added claims for violations arising under Article I of the N.C. Constitution found in the following sections: Section 19, "Law of the Land"; Section 32, "Exclusive Emoluments"; Section 35, "Recurrence of Fundamental Principles"; and Section 36, "Other Rights of the People." The second amended complaint sought declaratory and injunctive relief regarding Durham's official practice of asserting sovereign immunity. Defendants answered both amended complaints, maintaining the defense of "all applicable immunities."

Plaintiff filed a motion for summary judgment arguing defendants' defense of contributory negligence should be denied as a matter of law because there was no issue of material fact suggesting plaintiff was contributorily negligent. In the same motion, plaintiff also contended the court should enjoin defendants from asserting immunity

because defendants' customary practice of waiving/asserting immunity was unconstitutional. The trial court denied summary judgment to plaintiff on the basis that issues of material fact existed concerning the contributory negligence, and in a separate order granted summary judgment in favor of defendants on the N.C. Constitutional claim under Article I, Section 32 ("Exclusive Emoluments"), but allowed the rest to go forward. Subsequently, plaintiff voluntarily dismissed N.C. Constitutional claims under Article I, Sections 35 and 36.

Defendants filed a later motion for summary judgment, asserting that the defense of the "public duty doctrine" acted as a complete bar to plaintiff's remaining claims. Alternatively, defendants asserted immunity for any and all claims not insured by Durham's SRI. Defendants further sought that all constitutional claims raised by defendants' assertion of immunity be dismissed as a matter of law. The trial court denied this motion, finding there to be genuine issues of material fact as to each of plaintiff's remaining constitutional claims. It is from this second summary judgment order that defendants have appealed and which is now before this Court.

Defendants' appeal from the trial court's denial of summary judgment raises two issues. First, defendants assert that the public duty doctrine acts as a complete bar to plaintiff's negligence claims. Secondly, to the extent they are not covered by Durham's SRI policy, defendants contend they are insulated from liability by sovereign immunity, and that their application of the defense in this case raises no constitutional implications. Lastly, on the day of oral argument, defendants submitted a motion to dismiss plaintiff's constitutional claims alleging grounds that plaintiff lacks standing to challenge Durham's policy for asserting immunity, or alternatively, that the constitutional issues are not ripe for appellate review. Because we herein hold that plaintiff's claims are completely barred by the public duty doctrine, we need not consider the constitutional issues raised by plaintiff's complaints, nor defendants' grounds for their motion to dismiss the same. *See Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (acknowledging the long-held principle of judicial restraint that "the courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.")

## I. Interlocutory Nature of Appeal

[1] Initially, we address the nature of this appeal as being interlocutory and not subject to immediate appellate review because the

instant order rendered no final judgment. However, previous panels of this court have found a substantial right in a local government's assertion of sovereign immunity and the public duty doctrine. N.C. Gen. Stat. § 1-277 (2003) (allowing appeals from superior court which affect a substantial right); see, e.g., Hedrick v. Rains, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283 ("[O]rders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right."), aff'd per curiam, 344 N.C. 729, 477 S.E.2d 171 (1996); Clark v. Red Bird Cab Co., 114 N.C. App. 400, 403, 442 S.E.2d 75, 77 (a substantial right is affected where "defendants have asserted governmental immunity from suit through the public duty doctrine"), disc. review denied, 336 N.C. 603, 447 S.E.2d 387 (1994); Derwort v. Polk County, 129 N.C. App. 789, 790-91, 501 S.E.2d 379, 380 (1998) (a substantial right is affected where Polk County asserted the public duty doctrine).

## II. Standard of Review

[2] Defendants contend the trial court erred in denying their motion for summary judgment based on their assertion of the public duty doctrine and sovereign immunity. When reviewing an order of summary judgment, we discern "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003); Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 590, 599 S.E.2d 422, 426-27 (2004). In doing so, we view the evidence and allegations forecast in a light most favorable to the non-moving party. Stafford v. Barker, 129 N.C. App. 576, 577, 502 S.E.2d 1, 2, disc. review denied, 348 N.C. 695, 511 S.E.2d 650 (1998). For the case at bar, we must discern whether, upon review of the evidence in a light most favorable to plaintiff's claims, judgment as a matter of law should have been entered in favor of defendants upon the assertion of the defenses of the public duty doctrine and sovereign immunity.

With this standard in mind, we now address the merits.

## III. The Public Duty Doctrine

Our Supreme Court first expressly adopted the public duty doctrine in Braswell v. Braswell, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991) expressing its principles as follows:

[T]hat a municipality and its agents act for the benefit of the public, and therefore, there is *no liability for the failure to furnish police protection to specific individuals*. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act.

*Id.* (citations omitted) (emphasis added). The Supreme Court in *Braswell* relied on a New York Court for its determination that the doctrine's underlying policy is one of public resources and the executive decisions as to how these resources are to be deployed:

"For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection *based on specific hazards*, could and would inevitably determine how the limited police resources . . . should be allocated and without predictable limits."

*Id.* (quoting *Riss v. City of New York*, 240 N.E.2d 860, 860-61, (N.Y. 1968). In *Braswell*, the Court upheld a directed verdict on claims brought by a plaintiff against a North Carolina sheriff, acting in his official capacity, alleging failure to protect the plaintiff's mother against the criminal acts of plaintiff's father. *Id.*

After *Braswell* implemented the public duty doctrine into North Carolina's common law, the doctrine was interpreted to apply to public duties beyond those related to law enforcement protection. *See Moses v. Young*, 149 N.C. App. 613, 616, 561 S.E.2d 332, 334-35 (providing extensive review of the application of the doctrine since its adoption), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 199 (2002). In response to this expansion, the Supreme Court reasserted its holding in *Braswell*, stating:

The holding in Braswell was specifically limited to the facts in that case and to the issue of whether the sheriff negligently failed to protect the decedent . . .

[W]e have never expanded the public duty doctrine to any local government agencies other than law enforcement departments when they are exercising their *general duty to protect the public* . . . .

*Lovelace v. City of Shelby*, 351 N.C. 458, 461, 526 S.E.2d 652, 654 (2000) (emphasis added) (*Lovelace I*). After remand and rehearing from *Lovelace I*, this Court found that the public duty doctrine did not

immunize a police officer employed as a 911 operator alleged to be negligent in a six-minute delay of dispatching firefighter personnel to the fire where plaintiff's daughter was killed. *Lovelace v. City of Shelby*, 153 N.C. App. 378, 384-86, 570 S.E.2d 136, 141, *disc. review denied*, 356 N.C. 437, 572 S.E.2d 785 (2002) (*Lovelace II*).

Plaintiff contends that in light of *Lovelace I* and *Lovelace II* and their reassertion of *Braswell*, the public duty doctrine does not apply to the facts at bar. Specifically, plaintiff argues the doctrine applies to only those instances where the police fail to provide protection from criminal acts. Therefore, plaintiff asserts that allegations of Officer Cohn's negligent control of the accident scene on Garrett Road was not "police protection" as contemplated in *Braswell*, and therefore, when that alleged negligence leads to a third party unintentionally harming a victim at the scene, defendants are subject to liability. We do not agree.

*Lovelace I* sought to reign in the expansion of the public duty doctrine's application to other government agencies and ensure it would be applied in the future only to law enforcement agencies fulfilling their "general duty to protect the public," and thus reasserted the principles of *Braswell. Lovelace I*, 351 N.C. at 461, 526 S.E.2d at 654. *Braswell's* rationale for the rule focused on the limited resources of local government, and necessarily the discretionary decisions as to how those resources must be deployed. However, we find implicit in *Braswell* and the public duty doctrine that an officer fulfilling his or her duty to provide police protection must employ some level of discretion as to what each particular situation requires, criminal or otherwise. Therefore, we do not read *Braswell* or *Lovelace I* as immunizing discretionary decisions of law enforcement officers to *only* those occasions when responding to criminal offenders.

Since *Lovelace I*, a panel of this Court has considered the public duty doctrine as concerning the following: " 'failure to furnish police protection' or 'failure to prevent [a] criminal act' or *any other act of negligence proximately resulting in injury.*" *Moses*, 149 N.C. App. at 618, 561 S.E.2d at 335 (quoting *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901) (emphasis added)). In *Moses*, we found there was no "discretionary governmental action" when a police officer accidentally hit another vehicle and killed its driver in pursuit of a speeding motorcycle. *Moses*, 149 N.C. App. at 618, 561 S.E.2d at 335. We determined that the officer was not applying any discretion for his duties when accidentally hitting the *victim's* vehicle. *Id.* Similarly, in *Lovelace II*, there was no forecast evidence before our Court of any

discretionary determination made by the police officer to delay reporting a fire for some six minutes. *Lovelace II*, 153 N.C. App. at 381, 570 S.E.2d at 138.

In the case at bar, Officer Cohn promptly responded to an accident report. Using her trained judgment amidst heavy traffic and other peculiarities of the scene, and prioritizing her concern for the safety of those individuals involved in the accident, she parked her vehicle on the southbound shoulder of the roadway and employed all of her safety lights. She made a discretionary determination not to call for officer assistance as there was no personal injury at the scene, and she did not use flares or cones to redirect traffic around the scene based upon her determination that this would unnecessarily impede the flow of traffic where there were already traffic control measures in place for directing the heavy game traffic. Furthermore, she did not have the vehicles in the first collision move further north or off Garrett Road because the cars involved in the accident were already as far off the road as they could be without falling into a ditch, and plaintiff's vehicle required towing.

Though viewing the evidence in a light most favorable to plaintiff, we cannot ignore the discretionary demands of a police officer fulfilling her general duties owed when responding to the many and synergistic elements of a traffic accident. *See Beaver v. Gosney*, 825 S.W.2d 870 (Mo. App. 1992) (determining that measures required to be taken at an accident scene fall within the public duty doctrine). The record reflects Officer Cohn "actively weigh[ed] the safety interests of the public" when applying her discretion, and that there was nothing accidental about her conduct. *Moses*, 149 N.C. App. at 618-19, 561 S.E.2d at 335. While there are surely measures that Officer Cohn may have taken to decrease the threat of a potentially negligent third-party from hitting plaintiff, it is placing this unreasonable hindsight based standard of liability upon a police officer when performing public duties which is exactly that which the public duty doctrine seeks to alleviate.

Therefore, we hold that upon these limited facts, the public duty doctrine is applicable.

## IV. Exceptions to the Public Duty Doctrine

In the alternative, plaintiff contends that the "special relationship" exception to the public duty doctrine subjects defendants to liability in this case. We do not agree.

LASSITER v. COHN

[168 N.C. App. 310 (2005)]

In adopting the public duty doctrine in *Braswell*, the Court also adopted two exceptions to the doctrine:

> There are two generally recognized exceptions to the public duty doctrine: (1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) "when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered."

*Braswell*, 330 N.C. at 371, 410 S.E.2d at 902 (citations omitted). A "special relationship" is formed where a victim detrimentally relies on a police officer's words or conduct, and that reliance exposes plaintiff to a harm which is the result of police negligence. *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 338, 511 S.E.2d 41, 44, *cert. denied*, 350 N.C. 851, 539 S.E.2d 13 (1999). "The 'special relationship' exception must be specifically alleged, and is not created merely by a showing that the state undertook to perform certain duties." *Frazier v. Murray*, 135 N.C. App. 43, 50, 519 S.E.2d 525, 530 (1999).

A search of North Carolina case law reveals favorable consideration by our Courts for only a limited number of alleged special relationships in the public duty context. The Court in *Braswell* gave as an example of this special relationship "a state's witness or informant who has aided law enforcement officers[.]" *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. Additionally, our Court has intimated that "a special relationship existed between [plaintiff] and defendants, as [plaintiff] alleges that he was injured *while in police custody*." *Sellers v. Rodriguez*, 149 N.C. App. 619, 624, 561 S.E.2d 336, 339 (2002) (emphasis added). However, these cases provide little rationale for their consideration.

Plaintiff asserts a special relationship was formed with Officer Cohn when she motioned to him to stand next to her for the purpose of resolving issues related to the first collision. In his complaint, plaintiff alleges:

> B. [T]he Defendant Cohn negligently instructed the Plaintiff to stand behind his vehicle thereby placing him in a position of peril and in danger from oncoming traffic proceeding northward on Garrett Road.

Without assessing the sufficiency of this allegation for purposes of asserting the "special relationship" exception to the public duty doctrine, we find the evidence read in a light most favorable to plaintiff does not support the application of this exception to the case at bar.

Those instances where our Courts have intimated that a special relationship exists relate to some affirmative step taken by the police. These steps either provide a *quid pro quo* with a state's witness or informant where a plaintiff would rely on an agreement with law enforcement, the basis of which most likely includes bargained for police protection in exchange for inculpatory testimony or information, *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902, or where the plaintiff is actually taken into police custody and therefore is at the will of an officer and subject to any dangers that arise, *Sellers*, 149 N.C. App. at 624, 561 S.E.2d at 339. These situations are different in kind from that where a police officer, as part of her general duty to the public, requests to speak with a party to an accident or crime scene for purposes of an investigation. There is no reliance in such a situation, nor a surrendering of freedom of movement or judgment. We believe finding a special relationship in that instance would lead to second guessing and hesitation in performance of these general investigatory duties and the discretionary determinations they require, eroding the very underpinnings of the public duty doctrine of providing robust police protection despite limited public resources.

Lastly, we note a third exception to the public duty doctrine accepted by a minority of jurisdictions to which there may be an issue of fact as to its applicability in the case at bar. Without adopting the "high risk" exception to the public duty doctrine, this Court recognized it in *Vanasek*, 132 N.C. App. at 339, 511 S.E.2d at 45:

> "[L]ocal government officials knew or should have known the plaintiff or members of his class would be exposed to an unusually high risk if care was not taken by local government personnel, even without proof of reliance by the plaintiff."

(Citations omitted.) In *Vanasek*, a downed power line was reported to the local police. After being called to the scene, police officers had their dispatcher notify Duke Power and then left without providing any visible warning or barrier to the high risk condition. *Id.* at 336, 511 S.E.2d at 43. A cable worker coming near the line for unrelated work was later killed when brushing against it. *Id.* We note this exception to the public duty doctrine to acknowledge that situations akin to those of plaintiff have been provided for in the common law

of some jurisdictions. However, as we determined in *Vanasek*, adoption of the exception is best left to the Supreme Court or the General Assembly. *Id.*

Therefore, upon these facts, we find no exceptions to the public duty doctrine apply.

## V. Conclusion

When·viewed in a light most favorable to plaintiff, we find the evidence as forecast fell completely within Durham's immunization of performing a public duty, without exception, and summary judgment in favor of defendants on this ground should have been rendered as a matter of law. Further, in light of this determination, we need not reach those constitutional questions raised by plaintiff concerning defendants' policy for asserting sovereign immunity as a defense. *See Sellers*, 149 N.C. App. at 623, 561 S.E.2d at 339 (the public duty doctrine is its own bar immunizing police in performance of the general duties, and thus even "a waiver of governmental liability will not create a cause of action where none previously existed").

Therefore, after thorough review of the record, briefs, and transcripts in this matter, we hereby

Reverse.

Judges ELMORE and LEVINSON concur.