DONALD RAY STRICKLAND, Administrator of the Estate of PEYTON BROOKS STRICKLAND, Plaintiff v. THE UNIVERSITY OF NORTH CAROLINA AT WILMINGTON and THE UNIVERSITY OF NORTH CAROLINA AT WILMINGTON POLICE DEPARTMENT, Defendants

No. COA10-1589

(Filed 19 July 2011)

## Police Officers— information given to other officers—negligence claim—public duty doctrine

The Industrial Commission did not err by denying defendants' motion for summary judgment on the issue of liability preclusion under the public duty doctrine where plaintiff alleged that the UNC-W police department negligently provided false, misleading, and irrelevant information to sheriff's department officers who were serving an arrest warrant and that this false information proximately caused the decedent's death. In all cases where the public duty doctrine has been held applicable, the breach of the alleged duty has involved the governmental entity's negligent control of an external injurious force or the effects of such a force. Here, the alleged breach was not a negligent action with respect to some external injurious force, but was itself the injurious force.

Appeal by Defendants from order entered 11 October 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 June 2011.

*Comerford & Britt, L.L.P., by John Kenneth Moser and W. Thompson Comerford, Jr., for Plaintiff.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar, for Defendants.*

STEPHENS, Judge.

On 1 December 2006, Peyton Brooks Strickland ("Strickland") was killed in his residence by a member of the New Hanover County Emergency Response Team (the "ERT"). The ERT was serving a warrant for Strickland's arrest when a member of the ERT mistook the noise of a battering ram hitting the door of Strickland's residence for the sound of gunfire and discharged his weapon through Strickland's front door, mortally wounding Strickland.

The ERT had been deployed to serve Strickland's arrest warrant by the New Hanover County Sheriff's Department ("Sheriff's Department") after the Sheriff's Department received a request from

the University of North Carolina at Wilmington ("UNC-W") police department for assistance in serving the warrant. The UNC-W police department had been investigating Strickland as a suspect in connection with a 17 November 2006 assault and theft on the UNC-W campus. Based on their investigations of the crime, of Strickland, and of others suspected to be involved in the crime, the UNC-W police department concluded that service of Strickland's arrest warrant was a potentially dangerous matter that necessitated Sheriff's Department assistance.

Following Strickland's death, on 31 October 2008, Plaintiff Donald Ray Strickland ("Plaintiff"), Strickland's father and the administrator of Strickland's estate, filed with the North Carolina Industrial Commission an action under the North Carolina Tort Claims Act, asserting a claim for wrongful death against UNC-W and the UNC-W police department ("Defendants").[1] In his complaint, Plaintiff alleged that UNC-W police department officers negligently provided false, misleading, and irrelevant information to Sheriff's Department officers and ERT members in the process of securing ERT and Sheriff's Department assistance in serving Strickland's arrest warrant. Plaintiff further alleged that the provision of this false, misleading, and/or irrelevant information—including the allegedly false facts that Strickland was known to be armed and dangerous, that Strickland had been engaged in gang activity, and that Strickland had been involved in two previous assaults—proximately caused Strickland's death by leading ERT members to believe that they were entering into what the ERT member who shot Strickland described as a "severely dangerous environment including heavily armed suspects with histories of intentional physical violence causing injuries to persons."

On 5 February 2010, Defendants filed a motion for summary judgment, asserting that Plaintiff's claim is barred by the public duty doctrine. The motion was heard on 19 February 2010 by Deputy Commissioner George T. Glenn II, who denied Defendants' motion in

---

1. The Tort Claims Act provides, in relevant part, as follows:

> The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina . . . .

N.C. Gen. Stat. § 143-291(a) (2009).

a 26 February 2010 order. Defendants appealed the order to the Full Commission, which affirmed the denial of summary judgment and remanded the case for a full evidentiary hearing. On 19 October 2010, Defendants appealed the Full Commission's order to this Court.[2]

The sole issue on this appeal is whether the public duty doctrine applies in this case to bar Plaintiff's claim. We conclude that it does not.

"The public duty doctrine is a [] rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity." *Myers v. McGrady*, 360 N.C. 460, 465, 628 S.E.2d 761, 766 (2006). "The rule provides that when a governmental entity owes a duty to the general public . . . individual plaintiffs may not enforce the duty in tort." *Id.* at 465-66, 628 S.E.2d at 766. This doctrine has often been described, simply and oxymoronically, as "duty to all, duty to none." Frank Swindell, Note, *Municipal Liability for Negligent Inspections in* Sinning v. Clark—A *"Hollow" Victory for the Public Duty Doctrine*, 18 Campbell L. Rev. 241, 247-49 (1996) (quoted in *Multiple Claimants v. N.C. Health and Human Servs., Div. of Facility & Detention Servs.*, 176 N.C. App. 278, 282-83, 626 S.E.2d 666, 669 (2006), *modified and aff'd*, 361 N.C. 372, 646 S.E.2d 356 (2007)). Despite the presumable simplicity of a doctrine susceptible to such succinct encapsulation, application of the public duty doctrine in the North Carolina courts, as well as in other jurisdictions, has become a particularly prickly issue. *Cf. Thompson v. Waters*, 351 N.C. 462, 464, 526 S.E.2d 650, 651-52 (2000) (noting that "[s]ome courts have criticized the [public duty] doctrine as speculative and the cause of legal confusion, tortured analyses, and inequitable results in practice." (citation and internal quotation marks omitted)). As such, we precede our discussion of the doctrine's application to this case with a brief discussion of the doctrine's history in this jurisdiction.

The classic example of the public duty doctrine's applicability— and, indeed, the fact pattern of the case in which our Supreme Court first recognized the validity of the doctrine—involves a negligence claim alleging a law enforcement agency's failure to protect a person from a third party's criminal act. *See Braswell v. Braswell*, 330 N.C. 363, 370, 410 S.E.2d 897, 901 (1991) (recognizing the public duty doctrine and applying it to a claim against a sheriff for negligent failure

2. Although the denial of a motion for summary judgment is an interlocutory order generally not immediately appealable, this Court has previously allowed immediate appeal of a summary judgment order declining to apply the public duty doctrine to bar a claim against a governmental entity based on the doctrine's interrelated effect on the existence of a governmental defendant's sovereign immunity. *Smith v. Jackson Cty. Bd. of Educ.*, 168 N.C. App. 452, 457-58, 608 S.E.2d 399, 405 (2005).

to protect a murder victim from her murderer). In such a case, it is alleged, albeit unsuccessfully, that the law enforcement officer breached his duty to protect the victim and that that breach, or failure to protect, caused the victim's death. As there is no general "duty to protect" imposed on individual actors, *cf. Klassette v. Mecklenburg Cty. Area Mental Health*, 88 N.C. App. 495, 499, 364 S.E.2d 179, 182 (1988) (noting that "there exists in this state no general duty to aid individuals in distress"), the law enforcement officer's tort duty to protect allegedly arises from his (or, more accurately, his municipal employer's) overarching duty to furnish police protection to the public in general. *See Coleman v. Cooper*, 89 N.C. App. 188, 193, 366 S.E.2d 2, 6 (in reviewing a claim against a law enforcement agency for failure to protect, examining the "duty, if any, owed by the city, through its police department") (cited in *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901), *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), *disapproved in part by Hunt v. N.C. Dept. of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998). However, the public duty doctrine provides that because a municipality and its agents furnishing police protection "act for the benefit of the public" and not for a specific individual, the duty to provide police protection is to the general public rather than to a specific individual and, therefore, "there is no liability for the failure to furnish police protection to specific individuals." *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901 (citing *Coleman*, 89 N.C. App. at 193, 366 S.E.2d at 6). Stated differently, while the law enforcement agency owes a "duty to protect" to the public at large, individual members of the public as plaintiffs generally may not enforce that duty in tort. *Myers*, 360 N.C. at 465-66, 628 S.E.2d at 766. This limitation on a municipality's liability is subject to two exceptions:

> (1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.

*Braswell*, 330 N.C. at 371, 410 S.E.2d at 902 (internal quotation marks and citation omitted).

The justification for preventing an individual member of the public from enforcing the duty owed to the public as a whole, as stated by our Supreme Court in the police-protection context, is as follows:

The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources . . . should be allocated and without predictable limits.

*Braswell*, 330 N.C. at 371, 410 S.E.2d at 901-02 (quoting *Riss v. City of New York*, 22 N.Y.2d 579, 581-82, 240 N.E.2d 860, 860-61, 293 N.Y.S.2d 897, 898 (1968)). Our Supreme Court in *Braswell* also "refuse[d] to judicially impose an overwhelming burden of liability for failure to prevent every criminal act" on law enforcement, again recognizing "the limited resources of law enforcement." *Id.* at 370-71, 410 S.E.2d at 901.

Applying this same reasoning, our Courts have broadened this rule limiting a law enforcement agency's liability for failure to protect to also limit (1) a state inspection agency's liability for allegedly negligent inspections or allegedly negligent failure to inspect, *Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 495 S.E.2d 711, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998); *Hunt*, 348 N.C. 192, 499 S.E.2d 747; (2) a state correction agency's liability for allegedly negligent placement or supervision of a probationer, *Blaylock v. N.C. Dept. of Corr.—Div. of Cmty. Corr.*, 200 N.C. App. 541, 685 S.E.2d 140 (2009), *disc. review denied*, 363 N.C. 853, 693 S.E.2d 916 (2010); and (3) a state environmental agency's liability for allegedly negligent management of a forest fire. *Myers*, 360 N.C. 460, 628 S.E.2d 761. In each of these cases, it was reasoned that the alleged duty was owed to the public in general and was therefore unenforceable in tort by an individual member of the general public. *Myers*, 360 N.C. at 468, 628 S.E.2d at 767 (stating that because the statutes that set forth the powers and duties of a state forest fire fighting agency "are designed to protect the citizens of North Carolina as a whole, [the agency] does not owe a specific duty to plaintiff or to third-party plaintiffs"); *Stone*, 347 N.C. at 483, 495 S.E.2d at 717 ("Although [the statute governing workplace inspections] imposes a duty upon defendants, that duty is for the benefit of the public, not individual claimants as here. Plaintiffs' claims thus fall within the public duty doctrine . . . ." (internal citation omitted)); *Hunt*, 348 N.C. at 198, 499 S.E.2d at 751 (applying the public duty doctrine to preclude a claim alleging negligent inspection of go-karts and stating that "[t]he Amusement Device Safety Act and the rules promulgated thereunder are for the 'protec-

tion of the public from exposure to such unsafe conditions' and do not create a duty to a specific individual"); *Blaylock*, 200 N.C. App. at 545-46, 685 S.E.2d at 143 (reasoning that the duty to supervise a probationer and prevent his criminal actions was owed to public in general and holding that the public duty doctrine applied to bar plaintiff's claim). In so limiting the State's liability, our Courts cited the necessary deference to legislative-executive resource-allocation and/or the specter of overwhelming liability as the justification(s) for their decisions. *Myers*, 360 N.C. at 468, 628 S.E.2d at 767 (refusing to "judicially impose overwhelming liability on [state fire fighting agencies] for failure to prevent personal injury resulting from forest fires," and observing that "[f]ire fighting decisions . . . concern the allocation of limited resources to address statewide needs"); *Stone*, 347 N.C. at 481, 495 S.E.2d at 716 (recognizing the limited resources of the defendant-inspection agency and refusing "to judicially impose an overwhelming burden of liability on [defendant-inspection agency] for failure to prevent every employer's negligence that results in injuries or deaths to employees"); *Hunt*, 348 N.C. at 199, 499 S.E.2d at 751 (noting that if the public duty doctrine did not apply, defendant-inspection agency "would become a virtual guarantor of the safety of every go-kart subject to its inspection, thereby, exposing it to an overwhelming burden of liability for failure to detect every code violation or defect" (internal quotation marks omitted)); *Blaylock*, 200 N.C. App. at 545, 685 S.E.2d at 143 (applying the public duty doctrine and acknowledging that the doctrine "recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act").

In this case, Defendants contend that the alleged duty owed to Strickland is actually one owed to the general public such that Plaintiff should be precluded from enforcing the duty in a negligence action against Defendants. Such a limitation on their liability, Defendants urge, would further the policy justifications generally offered in support of the public duty doctrine. We are unconvinced.

The duty that Plaintiff is attempting to enforce in this case is best characterized as a law enforcement officer's duty to provide accurate information (or not to negligently provide false and misleading information) during a criminal investigation. Unlike in those cases where the public duty doctrine has been applied, this alleged duty is not one that is owed to the public in general. Rather, the duty to provide accurate information clearly benefits a certain, identifiable segment of the general public, *i.e.*, subjects of criminal investigations. In such a case where the plaintiff is not attempting to enforce in tort a duty owed to

the public in general, our Supreme Court has held the public duty doctrine to be inapplicable. *See Isenhour v. City of Charlotte*, 350 N.C. 601, 608, 517 S.E.2d 121, 126 (1999) (holding that because the municipality "has undertaken an affirmative, but limited, duty to protect certain children, at certain times, in certain places," "[t]he rationale underlying the public duty doctrine is simply inapplicable").

Furthermore, were we to generalize this duty as the duty to conduct non-negligent investigations, it still would not resemble the types of duties to the general public for which the public duty doctrine normally precludes liability. In all cases where the public duty doctrine has been held applicable, the breach of the alleged duty has involved the governmental entity's negligent control of an external injurious force or of the effects of such a force.[3] *See, e.g., Myers*, 360 N.C. 460, 628 S.E.2d 761 (negligent control of a forest fire not started by fire fighting agency); *Wood v. Guilford Cty.*, 355 N.C. 161, 558 S.E.2d 490 (2002) (failure to prevent third party's criminal act on county property); *Stone*, 347 N.C. 473, 495 S.E.2d 711 (failure to ensure plant worker's ability to escape plant fire not started by inspection agency); *Hunt*, 348 N.C. 192, 499 S.E.2d 747 (negligent inspection of amusement ride prior to ride's malfunction, which was not caused by the inspection); *Braswell*, 330 N.C. 363, 410 S.E.2d 897 (failure to prevent a third party's criminal act). In this case, however, the alleged breach is not a negligent action with respect to some external injurious force. Rather, the UNC-W police department's act of negligently providing misleading and inaccurate information was itself the injurious force.

Conceptually related to this issue is Defendants' argument that the public duty doctrine bars Plaintiff's claim because UNC-W police officers did not fire the bullets that killed Strickland and, therefore, UNC-W police officers were not the "direct cause" of the harm. As noted previously by this Court, the public duty doctrine only precludes liability in situations where the alleged governmental tortfeasor is not the "direct cause" of the alleged injury. *See Moses v. Young*, 149 N.C. App. 613, 616, 561 S.E.2d 332, 334 ("An exhaustive review of the public duty doctrine as applied in North Carolina reveals no case in which the public duty doctrine has operated to shield a defendant from acts directly causing injury or death."), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 199 (2002); *see also Blaylock*, 200 N.C. App. at

---

3. We also note that section 143-299.1A of the Tort Claims Act, applicable to causes of action arising on or after 1 October 2008, provides that the public duty doctrine is only a defense for (1) law enforcement failure to protect from acts of third parties and acts of God, and (2) failure to perform health or safety inspections. N.C. Gen. Stat. § 143-299.1A (2009).

547, 685 S.E.2d at 144 (finding public duty doctrine applicable where placement of a probationer in a home with minor children only "indirectly" resulted in the children being sexually assaulted); *Smith*, 168 N.C. App. at 460, 608 S.E.2d at 406 (finding the public duty doctrine inapplicable where a defendant's "affirmative conduct" "directly" injured plaintiff). However, that the doctrine is only applicable where the government entity is not the "direct cause" of a plaintiff's injury does not mean, as Defendants suggest, that a governmental entity is shielded from liability whenever the entity is not the last link in the chain of causation.[4] Rather, it means that the public duty doctrine may shield a governmental entity from liability only where the entity was not the impetus for, *i.e.*, did not bring about, the injurious force. *See, e.g., Stone*, 347 N.C. 473, 495 S.E.2d 711 (negligent fire inspection did not bring about fire); *Hunt*, 348 N.C. 192, 499 S.E.2d 747 (negligent amusement ride inspection did not bring about ride malfunction); *Braswell*, 330 N.C. 363, 410 S.E.2d 897 (ignoring citizen's complaints did not bring about criminal action); *Blaylock*, 200 N.C. App. 541, 685 S.E.2d 140 (placement of probationer in victim's home did not bring about sexual assault); *see also Smith*, 168 N.C. App. at 460, 608 S.E.2d at 406 ("The public duty rule applies only to situations in which a plaintiff has been directly harmed by the conduct of a third person and only indirectly by a public employee's dereliction of a duty—a duty imposed on him or her solely by his or her contract of employment— to interrupt or prevent the third person's harmful activity." (quoting 63C Am. Jur. 2d *Public Officers and Employees* § 248 (1997)).

In this case, although UNC-W police officers may not have been the last link in the chain of causation for Plaintiff's injury, if the facts alleged by Plaintiff are taken to be true, as they must in the summary judgment context, *Cucina v. City of Jacksonville*, 138 N.C. App. 99, 101-02, 530 S.E.2d 353, 354, *disc. review denied*, 352 N.C. 588, 544 S.E.2d 778 (2000), the UNC-W police department was the impetus for

---

4. Indeed, this Court has held that the public duty doctrine only applies to duty and not causation, *Drewry v. N.C. Dept. of Transp.*, 168 N.C. App. 332, 337-38, 607 S.E.2d 342, 346-47, *disc. review denied*, 359 N.C. 410, 612 S.E.2d 318 (2005), and that the normal rules of negligence, including proximate cause, apply in the Tort Claims Act context. *Barney v. N.C. State Highway Comm'n*, 282 N.C. 278, 284, 192 S.E.2d 273, 277 (1972) ("Under the Tort Claims Act[,] negligence, contributory negligence and proximate cause . . . are to be determined under the same rules as those applicable to litigation between private individuals." (quoting *MacFarlane v. Wildlife Res. Comm'n*, 244 N.C. 385, 93 S.E.2d 557 (1956))). Accordingly, in a case such as this, where the breach is the first link in a multi-link chain of causation (negligent provision of inaccurate information caused a high state of alarm, caused an ERT member to mistake a battering ram for a gunshot, caused the ERT member to fire his weapon, caused Strickland to die), liability is not precluded solely because the allegedly negligent act is not the last link in the chain of causation.

the injurious force, *i.e.*, UNC-W police officers' negligent provision of inaccurate information *brought about* the ERT member's decision to fire his weapon through Strickland's front door. As it was the UNC-W police department's breach of its "affirmative, but limited," duty to Strickland that "directly caused" Strickland's death, we conclude that the public duty doctrine does not shield Defendants from liability for their actions in this case. *See Isenhour*, 350 N.C. at 608, 517 S.E.2d at 126 (holding that the public duty doctrine is inapplicable where plaintiff is alleging that the governmental defendant breached an "affirmative, but limited," duty owed to an "identifiable group"); *see also Moses*, 149 N.C. App. at 616, 561 S.E.2d at 334 (public duty doctrine inapplicable where governmental defendant's negligence was direct cause of plaintiff's injury).

In support of this conclusion, we note that extending the public duty doctrine to limit Defendants' liability in this case would not further the public policy justifications often cited in support of the doctrine. First, whereas a duty to protect from third-party criminal acts, enforceable in tort, could allow civil courts to impinge upon a municipality's power to decide how best to allocate its limited resources, there is no similar divestiture of discretionary, legislative-executive, resource-allocation power implicit in the imposition of liability here. Defendants have not argued that "after actively weighing the safety interests of the public," UNC-W police officers concluded that providing false and misleading information was a more efficient allocation of resources than providing accurate information. *See Moses*, 149 N.C. App. at 619, 561 S.E.2d at 335. Nor is there any evidence that conducting negligent investigations is part of any legislative or executive strategy in North Carolina. Because the UNC-W police department's actions in this case did not involve discretionary, resource-allocation decisions, there is no concern that allowing the alleged duty to be enforced in tort "would inevitably determine how the limited police resources . . . should be allocated," and, thus, this justification is not implicated. *Braswell*, 330 N.C. at 371, 410 S.E.2d at 901.

Likewise, holding state law enforcement agencies liable for negligent acts committed by officers *under the direct control* of those agencies does not raise the same specter of unlimited liability as holding law enforcement and inspection agencies liable for failing to prevent or mitigate all harmful acts by all third parties.

Finally, although not a traditional justification for the public duty doctrine's applicability, we note that imposition of liability in this case would not subject the UNC-W police officers to the "unreasonable, hindsight based standard of liability" discussed in *Lassiter v.*

*Cohn,* 168 N.C. App. 310, 318, 607 S.E.2d 688, 693 (2005). In *Lassiter,* a police officer investigating a three-car collision on the side of a road during heavy traffic decided not to use flares or cones to redirect traffic around the scene of the accident or to require the vehicles involved in the accident to move further off the road. *Id.* While the officer was interviewing the plaintiff, who was involved in the car accident, both the officer and the plaintiff were struck by a passing car, severely injuring the plaintiff. *Id.* at 313, 607 S.E.2d at 690. This Court held that the public duty doctrine must recognize the "discretionary demands of a police officer fulfilling her general duties owed when responding to the many and synergistic elements of a traffic accident." *Id.* at 318, 607 S.E.2d at 693. As such, this Court applied the public duty doctrine to preclude liability, stating that

> [w]hile there are surely measures that [the officer] may have taken to decrease the threat of a potentially negligent third-party from hitting plaintiff, it is placing this unreasonable, hindsight based standard of liability upon a police officer when performing public duties which is exactly that which the public duty doctrine seeks to alleviate.

*Id.*

Unlike *Lassiter,* this case does not involve those "many and synergistic elements" that would have required UNC-W police officers to make the rushed, discretionary determination to provide the ERT and sheriff's officers with inaccurate and misleading information. While we recognize the UNC-W police department's interest in efficiently concluding investigations and in protecting officers participating in those investigations, these interests bear more on the yet-unresolved issues of the existence and breach of the duty alleged by Plaintiff. At this stage in the proceedings, this Court is limited to a determination of whether the alleged duty, assuming its existence, is one that is owed to the public in general such that the public duty doctrine should apply to preclude Defendants' liability. We conclude that it is not.

Based on the foregoing, we hold that the Industrial Commission did not err in denying Defendants' motion for summary judgment on the issue of liability preclusion under the public duty doctrine. Therefore, the order of the Industrial Commission is

AFFIRMED.

Chief Judge MARTIN and Judge THIGPEN concur.